MID-CONTINENT PIPE LINE CO. et al. v. CREEK COUNTY EXCISE BOARD.

No. 32511. June 4, 1946.

*169 P. 2d 744.*

Mastin Geschwind, of Oklahoma City, for plaintiffs in error.

George B. Coryell, County Atty., of Sapulpa, and S. A. Denyer, Asst. County Atty., of Drumright, for defendant in error.

RILEY, J. This is an appeal from the Court of Tax Review denying in part the protest of plaintiffs in error against alleged illegal tax levies in school districts numbered 12, 13, and 19 in Creek county, for the fiscal year 1945-1946.

The excise board levied a tax of 15.5 mills for school district No. 12. Protestants attack 2.5 mills of the levy as being illegal. The record shows that the school was closed in the district for the fiscal year, by a majority vote of the electors. $132.50 was appropriated for upkeep of the district's property and administration costs. $1,834.42 was appropriated to pay transfer fees for pupils residing in the district, who would be transferred and authorized to attend school in other districts, making a total appropriation of $1,966.92. $1,145.36 thereof was available from un-

expended surplus cash, net taxes in process of collection, and other miscellaneous sources, leaving $861.56 to be raised by ad valorem taxes, and for that purpose, the excise board levied the 15.5 mills.

Protestants contend that under the law, 13 mills, and no more, could be levied, in that the budget shows that no school would be maintained and no transportation was to be provided. They rely upon 70 O.S. 1941 § 1037.9, which, in part, provides:

"If no school is maintained in a district from which pupils are transferred, the maximum funds available from a fifteen-mill levy (or its equivalent in funds used for mandatory tax reduction purposes) and other miscellaneous revenue shall be appropriated for transfer fees in so far as necessary, except the equivalent of two mills which may be reserved for appropriation for necessary building maintenance costs, enumeration, insurance, interest on warrants or any other lawful purpose. . . ."

Protestants contend that under said section, the equivalent of 2 mills, out of the maximum levy of 15 mills, must be reserved for appropriation for necessary building maintenance costs, enumeration, etc., and that the transfer fees must be provided for by the remaining 13 mills and other miscellaneous revenues. They rely, in part, upon an opinion of the Attorney General given to the county attorney of Cimarron county, concerning the same subject, that:

"You are advised that it is the opinion of the Attorney General that a school district which does not maintain a school and has transferred all of its pupils to another district is not required to appropriate for transfer fees, any amount in excess of the funds available from a tax levy of thirteen mills and other miscellaneous revenues, even though the per capita costs of the districts to which the pupils are transferred are in excess thereof.

"The Attorney General is of the opinion that it is not necessary to appropriate, for such transfer fees, the unneeded and unearned portion of the two mill levy the district is authorized to use for 'necessary building maintenance costs, enumeration, insurance, interest on warrants' and other purposes."

The tax court held that the maximum tax levy allowed by § 1037.9, supra, is 15 mills; that the levy of 15.5 mills is excessive and illegal to the extent of .5 mills, but that said section requires that the miscellaneous revenues of the district, together with the net proceeds of the levy of 13 mills, be appropriated to pay the transfer fees; but makes it discretionary with the excise board to appropriate and provide for such purposes the net proceeds of an additional levy of not more than 2 mills and any surplus cash or surplus represented by taxes in process of collection.

The protest was allowed to the extent of .5 mill and disallowed as to the 2 mills.

It is our view that the Legislature intended that if no school is maintained in a district from which pupils are transferred, such district must, so far as funds are available, provide for payment of the necessary transfer fees. This is apparent from the fact that 70 O.S. 1941 § 1037.10 provides that after the amount which the district must appropriate for transfer fees is determined, the balance of such transfer fees shall be paid by the state. To this end, section 1037.9, supra, requires the use, so far as necessary, of all funds which are usable for mandatory tax reduction purposes, and if this be insufficient, then a levy of 15 mills or so much thereof as may be necessary for ad valorem taxes must be made. However, the Legislature recognized the need for money to pay other expenses necessary, such as building maintenance costs, etc. For that purpose, it is provided that an amount equivalent to the sum which a levy of 2 mills would produce may be reserved from appropriations for transfer fees and appropriated for such necessary expenses. Clearly, this calls for a levy of 2 mills, if neces-

sary, for the payment of maintenance costs, etc.

In this case, the estimated needs of the school district requested an appropriation of $30 for administration and $200 for upkeep of real property, or a total of $230 for both purposes. The school district's assessed valuation was $58,304. A two-mill levy on that valuation would produce only $116.50. Therefore, the excise board could not approve an appropriation of $230, but did approve and appropriate $30 for administration purposes and $102.50 for upkeep of real property. That was $25.90 more than the two-mill levy would produce, and probably accounts for the .5 mill levy above the 13 mills authorized by law.

The remaining 13 mills, of the 15-mill levy, would produce approximately $758, which together with surplus cash, taxes in process of collection, and estimated income from other sources would amount to about $1,912, which, after deducting for delinquencies, would be approximately the amount appropriated for transfer fees. To hold that none of the transfer fees could be paid out of surplus cash on hand and taxes in process of collection would not help the protestants' case for the reason that a 13-mill levy would fall far short of producing sufficient money to pay the transfer fees and the state would be required to make up a greater deficiency. The excise board allocated 7.5 mills out of the constitutional limit of 15 mills and an additional 10-mill levy was authorized by a vote of the electors of the district. Therefore, the limitation on the amount which could be levied for transfer fees was the provision of section 1037.9. The Court of Tax Review was correct in sustaining the protest as to the .5 mill levy and in denying as to the two mills.

As to the protest against 5.5 mills of the levy made in school district No. 13, the financial statement of the district shows that on June 30, 1945, there was $322.73 cash in a building fund of said district, which had been raised in some prior year or years by special levies voted under section 10, art. 10, Constitution. In its estimate of needs for the fiscal year, the governing board did not show a need for any sum for building purposes during the fiscal year. It was stipulated that the district had no sinking fund requirements for the fiscal year. The printed form used for the financial statement and estimated needs as prepared by the State Examiner and Inspector included the following statement signed by the members of the school board:

"3. We further certify that any surplus cash reported in our building fund is required for immediate or cumulative program of construction unless there be attached within certified copy of a resolution signed by a majority of the members of this board to the effect the program of building has been completed or abandoned, if attached, then the excise board is directed to apply said balance to reduce levies in accord with H. B. 286, S.L. 1945."

Protestants contend that by reason of the fact that the district budget showed said sum of $322.73 in the building fund and showed no need for the use of that fund during the year, it shows on its face an unrequired building fund surplus cash and is sufficient to require the refunding thereof to the taxpayers by the use of the same to reduce the tax levy for the sinking fund, if any, of the school district, or, in the absence of sinking fund obligations, by use thereof to reduce the tax levy for the general fund, under the provisions of chapter 2c, Title 62, S.L. 1945, 62 O.S. Supp. 1945 §§ 333 and 334. Such application of the $322.73 would reduce the tax levy in the district to the extent of 5.5 mills. 62 O.S. Supp. 1945 § 333 provides:

"When the governing board of any county, city, town or school district shall determine by proper resolution in writing that a surplus exists in any building fund created under the provi-

220

sions of Section Ten (10), Article Ten (10), Oklahoma Constitution, not required for the completion of the purpose for which said taxes were levied and collected, or where said proposed construction has been abandoned, said surplus shall be refunded to the taxpayers by the use thereof by the county excise board to reduce the tax levy for the sinking fund of the municipality for which the building fund was created. Provided, that any portion of said building fund surplus not required to eliminate a sinking fund tax levy for said municipality shall be refunded to the taxpayers by the use thereof to reduce the tax levy for the benefit of the general fund for the same municipality."

Section 334 declares the purpose of the act to be to dispose of surplus tax collections in keeping with the Constitution, sec. 19, art. 10, providing:

"No tax levied and collected for one purpose shall ever be devoted to another purpose."

Said section 334 further provides:

"Nothing in this act shall prevent a school district from levying successive levies for the purpose of erecting a building."

As shown by section 333, quoted above, before any money in a building fund created under section 10, art. 10, Constitution, may be "refunded to the taxpayers" as provided in said section, there must be a proper resolution in writing by the governing board declaring that a surplus exists in such fund, or that the proposed construction has been abandoned. No such resolution was adopted, so far as the record shows. There is no showing whatever that the building program for which the fund was created has ever been abandoned or that any building has been completed thereunder. The governing board did certify, as above shown, but that certificate, in the absence of a proper resolution, is wholly insufficient to require the excise board to "refund" the money. The protest was properly denied.

The same grounds are set forth in the protest as to the levy for school district No. 19. Substantially the same record was made. The protest as to that district was likewise properly denied.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, and CORN, JJ., concur.